**FILED**
**Mar 07, 2022**
**09:01 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Emad Hanna,** | ) | **Docket No. 2019-06-2116** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 21526-2019** |
| **Gaylord Opryland, d/b/a Marriott** | ) | |
| **International,** | ) | |
| **Self-insured Employer.** | ) | **Judge Kenneth M. Switzer** |

## COMPENSATION ORDER DENYING BENEFITS

At a March 1, 2022 compensation hearing, Emad Hanna alleged an injury to his neck, arm and fingers while working at Gaylord Opryland, d/b/a Marriott International. Mr. Hanna asserted that the essential issue is an aggravation of a preexisting condition.. The Court agrees.

However, a physician of Mr. Hanna's choosing found that he aggravated a preexisting condition, but the aggravation was temporary and resulted in no anatomical change or permanent impairment. Because of this, the Court must deny his request for permanent disability benefits. The Court additionally cannot order payment of past medical treatment because Mr. Hanna did not offer admissible evidence regarding those sums.[1]

### History of Claim

Mr. Hanna testified that he works as a banquet server for Marriott. On March 20, 2019, after scooping ice cream for approximately an hour and a half for more than 170 persons, Mr. Hanna felt tingling in his neck down into his right arm and fingers. He said the ice cream was "frozen like a rock" and hard to scoop. Mr. Hanna reported his symptoms to Marriott.

---

[1] Mr. Hanna requested an Arabic interpreter. Hebba Abulsaad interpreted at the hearing and is commended for her fine work.

Two days later, Marriott offered a panel of physicians, and Mr. Hanna chose Dr. Robert Carver.[2]  Mr. Hanna complained of right-arm pain and hand numbness to Dr. Carver, who diagnosed a trapezius muscle strain, subacromial bursitis in the right shoulder joint, and cervical spondylosis without myelopathy.  The doctor declined to place him on restricted duty.  Dr. Carver treated Mr. Hanna for approximately two months until placing him at maximum medical improvement.

Believing the authorized treatment had concluded, Mr. Hanna began treating on his own with Dr. Amir Abtahi in April.  He ordered an MRI and EMG, and diagnosed neck pain, right C6 radiculopathy, and a central disc herniation at C5-6 resulting in severe bilateral foraminal stenosis.  Dr. Abtahi treated Mr. Hanna conservatively and saw him approximately four times through October.  At the final visit, Dr. Abtahi noted that Mr. Hanna no longer had pain in his neck or arm, but the numbness in his fingers remained.  He believed it would heal over time and wrote that Mr. Hanna may return as needed.  Dr. Abtahi placed no permanent restrictions but recommended a functional capacity evaluation, which never took place.

After Mr. Hanna filed a petition for benefit determination, Marriott's attorney agreed during a status hearing to offer a panel of orthopedic specialists.  So, Mr. Hanna chose Dr. Sean Kaminsky.

Dr. Kaminsky evaluated him once, where he examined him, performed x-rays, and reviewed MRI results.  In a C-32, he wrote that Mr. Hanna suffered cervical spondylosis and checked "no" in response to the questions of whether the employment activity, more likely than not, was primarily responsible for the injury or need for treatment, and whether the employment was primarily responsible for the present need for treatment of a preexisting condition.

Dr. Abtahi also completed a C-32.  Marriott objected and deposed the doctor.

At the deposition, Dr. Abtahi testified that Mr. Hanna aggravated a preexisting condition.  He explained that "the patient had underlying degenerative changes within his C5-6 disc which were a result of chronic degenerative changes.  However, the symptoms began after this incident at work while scooping ice cream.  So this would have represented an exacerbation of an underlying condition, and the exacerbation is what required treatment."  Dr. Abtahi then confirmed it was a "temporary aggravation or flare-up of pain."  He concluded Mr. Hanna had no anatomical change or permanent advancement as a result of scooping ice cream and assigned a zero-percent impairment rating.

---

[2] Mr. Hanna testified on direct examination that he could not remember being given a choice, but on cross-examination, he acknowledged that it appeared to be his signature on the Choice of Physician Form C-42.

Mr. Hanna asked the Court to award compensation for his permanent disability and to order payment of past medical bills. Regarding the latter request, on Marriott's objection, the Court excluded the bills because they did not meet the requirements of Tennessee Compilation Rules and Regulations 0800-02-21-.16(2)(b) (February, 2022) (medical bills are self-authenticating and admissible when signed by a physician or accompanied by a form signed by a medical provider or records custodian certifying that the bills are true and accurate); *and see Eaves v. Ametek, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 53, at *8-9 (Sept. 14, 2018) (medical bills must be accompanied by proof that they are reasonable, necessary, and causally-related to the work accident to be admitted into evidence).

Marriott countered that the injury did not arise out of work, relying on Dr. Kaminsky's opinion.

### Findings of Fact and Conclusions of Law

Mr. Hanna bears the burden of proving entitlement to workers' compensation benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2021); *Panzarella v. Amazon.com, Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244, at *8 (Tenn. Workers' Comp. Panel May 16, 2018).

Here, Mr. Hanna was a forthright and credible witness. The Court finds he injured his neck, right arm and fingers while scooping ice cream at work for Marriott, and his finger numbness remains. However, his testimony alone is not enough to prove work-relatedness, because "causation must be established by expert medical evidence, except in the most obvious cases." *Id.* Moreover, work-relatedness is the threshold issue, and an award of permanent disability benefits is appropriate only when a physician has placed a permanent impairment rating. *See* Tenn. Code Ann. § 50-6-207(3)(A) (permanent partial disability is calculated by multiplying the employee's impairment rating by 450 weeks).

As to causation, the Workers' Compensation Law states that an aggravation of a preexisting condition is not compensable "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). An employee can satisfy the burden of proving a compensable aggravation if: "(1) there is expert medical proof that the work accident contributed more than fifty percent (50%) in causing the aggravation, and (2) the work accident was the cause of the aggravation more likely than not considering all causes." *Barnes v. Jack Cooper Transp.,* 2020 TN Wrk. Comp. App. Bd. LEXIS 16, at *7 (Mar. 24, 2020).

This case offers two different expert opinions on causation. When faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept[.]" *Id.* at *8.

Looking first at the authorized physician's responses on the C-32, Dr. Kaminsky concluded that the employment activity did not primarily cause the injury or need for treatment, nor was it primarily responsible for the present need for treatment of a preexisting condition. Because he was chosen from a panel, Dr. Kaminsky's causation opinion is presumed correct. Tenn. Code Ann. § 50-6-102(14)(E). Dr. Kaminsky examined Mr. Hanna once before reaching his conclusion.

In contrast, Dr. Abtahi saw him four times and followed Mr. Hanna's progress for approximately six months. As the Supreme Court observed, "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991). The Court places greater weight on Dr. Abtahi's opinion. Dr. Abtahi testified, and the Court finds, that scooping ice cream aggravated Mr. Hanna's underlying degenerative changes.

But this does not end the analysis. As to past medical expenses, in *Miller v. Lowe's Home Center, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Oct. 21, 2015), the Appeals Board held that an award of medical benefits is appropriate, where an injured worker alleges an aggravation of a preexisting condition and offers evidence that the aggravation arose primarily out of and in the course and scope of employment. Further, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation. In this case, however, Mr. Hanna did not offer admissible proof of the past medical expenses he incurred, so the Court cannot rely on *Miller* to order Marriott to pay them.

As to permanency, Dr. Abtahi said the aggravation was *temporary and resulted in no anatomical change.* The Appeals Board has held that, "in cases where the employee alleges an aggravation of a pre-existing condition, evidence of a mere increase in pain caused by a work accident, with no accompanying evidence that the work accident advanced the severity of the pre-existing condition or caused an anatomic change in that condition, is insufficient to support a finding of compensability." *Barnes,* at *9. Dr. Abtahi determined that Mr. Hanna's aggravation of a preexisting condition did not advance its severity or result in an anatomical change.

Therefore, neither physician's opinion supports the relief Mr. Hanna seeks, and their opinions are the only medical proof before this Court. Stated another way, Mr. Hanna has offered no medical evidence that his *current condition* arose primarily out of his employment with Marriott, or that he suffered a permanent impairment. He has not satisfied his burden to show by a preponderance of the evidence that his claim for permanent partial disability is compensable.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hanna's claim for benefits is denied.

2. Costs of $150.00 are assessed against Marriott under Tennessee Compilation Rules and Regulations 0800-02-21-.06, to be paid to the Court Clerk within five business days of this order, and for which execution may issue as necessary.

3. Marriott shall file a completed Form SD-2 within ten days after this order becomes final.

4. Unless appealed, the order shall become final thirty days after issuance.

   **ENTERED March 7, 2022.**

   _Kenneth M. Switzer_
   **JUDGE KENNETH M. SWITZER**
   **Court of Workers' Compensation Claims**

### APPENDIX

Exhibits:
1. First Report of Injury
2. Form C-42 Choice of Physician-Dr. Carver
3. Form C-42 Choice of Physician-Dr. Kaminsky
4. Wage Statement and attachments
5. Deposition transcript, Dr. Abtahi
6. Exhibits to Dr. Abtahi's Deposition
7. C-32, Dr. Kaminsky, and attachments
8. Dr. Carver's medical records
9. Medical bills (Identification only)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice, February 28, 2020, and Employer's Amendments
3. Show Cause Order
4. Employer's Motion to Dismiss
5. Request for Expedited Hearing
6. Order on Show Cause Hearing
7. Order on Status Conference, June 30, 2020

8. Order on Status Conference, August 10, 2020
9. Employer's Expedited Hearing Position Statement
10. Expedited Hearing Order
11. Status Hearing Order, November 30, 2020
12. Status Hearing Order, February 8, 2021
13. Status Hearing Order, March 30, 2021
14. Order, March 30, 2021
15. Status Hearing Order, April 27, 2021
16. Status Hearing Order, May 12, 2021
17. Notice of Intent to Rely on C-32
18. Status Hearing Order, July 27, 2021
19. Dispute Certification Notice, July 29, 2021, and Employer's Amendments
20. Notice of Objection to the Use of C-32
21. Employer's Motion to Continue Compensation Hearing
22. Order Granting Continuance
23. Motion Objecting to Deposition
24. Employer's Response in Opposition to Employee's Motion Objecting to Deposition
25. Order Denying Motion Objecting to Deposition
26. Status Hearing Order, November 8, 2021
27. Dispute Certification Notice, January 4, 2022, and Mediation Violation
28. Employer's Compensation Hearing Position Statement
29. Employer's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of the Compensation Order was sent as indicated on March 7, 2022.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Emad Hanna, self-represented employee | X | | X | taimour2008@yahoo.com<br>5016 Millpond Court<br>Mt. Juliet TN  37122 |
| Travis Ledgerwood, employer's attorney | | | X | tledgerwood@morganakins.com<br>plunny@morganakins.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

        If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court.  To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board.  *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure.  If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.  *See* Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*